

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

June 28, 2022

BY ECF
Hon. Ronnie Abrams
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2203
New York, NY 10007

          Re: *Tanvir v. Tanzin*, 13 Civ. 6951(RA)

Dear Judge Abrams:

  We write respectfully on behalf of the fifteen remaining defendants in this action (the "Individual Agent Defendants" or "Agents") to advise the Court of the recent decision of the Second Circuit Court of Appeals in *Sabir v. Williams*, __ F.4th __, 2022 WL 2183439 (2d Cir. June 17, 2022).

  The two plaintiffs in *Sabir*, who were incarcerated at a federal correctional facility, alleged that the defendant prison wardens violated their rights under the Religious Freedom Restoration Act ("RFRA") by enforcing a policy restricting group prayer to groups of two inmates unless they gathered in the prison chapel, despite that facility's frequent unavailability. *Sabir*, 2022 WL 2183439, at *1. In its June 17, 2022 opinion, the Court of Appeals ruled that the wardens were not entitled to qualified immunity at the pleadings stage because (1) the allegations of the operative complaint, and the documents attached to the complaint as exhibits, did not establish that the wardens' enforcement of the group prayer policy against the plaintiffs was in service of a compelling government interest, and (2) it was clearly established in *Salahuddin v. Goord*, 467 F.3d 263, 275-76 (2d Cir. 2006), that substantially burdening an inmate's religious exercise without justification violates RFRA. *Sabir*, 2022 WL 2183439, at **1, 4, 6-10.

  There are several key distinctions between the *Sabir* plaintiffs' allegations and Plaintiffs' allegations in this case, which underscore that the Individual Agent Defendants here are entitled to qualified immunity on the face of the Amended Complaint.

  *First*, according to the operative complaint in *Sabir*, the inmate plaintiffs provided specific notice, both verbally and in writing, that enforcement of the prison's group prayer policy would burden the exercise of their religion.[1] In stark contrast, the Amended Complaint in this case

---

[1] *See Sabir*, 2022 WL 2183439, at *2 (reciting plaintiffs' allegations that, "[i]n October 2014, Sabir was praying with two other inmates in the auditorium when corrections officers approached to inform them that group prayer was only permitted in the chapel and that violating the rule could result in discipline," and that "Sabir and the others explained to the officers that their religion required them to perform congregational prayer five times per day and that the chapel was frequently unavailable during those times"); *id.* at *3 (reciting plaintiffs' allegation that "[e]ach

contains no allegation that any Plaintiff ever indicated, in words or substance, that serving as an informant or providing information about other individuals in their Muslim communities would violate their religious beliefs or otherwise impact their religious exercise. To the contrary, Tanvir and Shinwari provided other, non-religious reasons for their refusal to work as informants, AC ¶¶ 78, 161; Algibhah "assured the agents that he would work for them as soon as they took him off the No Fly List," AC ¶ 134; and Plaintiffs acknowledge that individuals can have reasons other than religion for not wanting to serve as informants, AC ¶ 65.

*Second*, as the Court noted in *Sabir*, the inmate plaintiffs' "performance of congregational prayer is undoubtedly religious exercise." 2022 WL 2183439, at * 5. As discussed at length during the oral argument on June 14, 2022, providing information about others in one's religious community is not "undoubtedly religious exercise," at least in the absence of any indication from Plaintiffs that they had a religious objection to doing so.

*Third*, the panel in *Sabir* concluded that at the time of the wardens' enforcement of the group prayer policy, it was clearly established that substantially burdening an inmate's religious exercise without justification violates RFRA. 2022 WL 2183439, at **8-9 (citing *Salahuddin v. Goord*, 467 F.3d at 275-76).² Of particular relevance here, the panel found that it was clearly established under the Second Circuit's prior decision in *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993), "that preventing a prisoner from engaging in congregational prayer constitutes a substantial burden on the prisoner's religious exercise." *Sabir*, 2022 WL 2183439, at *9 n.8 (noting that "we have consistently recognized that policies restricting access to group prayer impose a burden on prisoners' free exercise rights" (citing *Salahuddin v. Coughlin*)); *see also id.* at *5 (noting that "'[i]t is *well established* that 'prisoners have a constitutional right to participate in congregate religious services,'" and that "that same religious exercise is also protected by RFRA" (quoting *Salahuddin v. Coughlin*; emphasis in *Sabir*)).³ Accordingly, the *Sabir* panel ruled, "[a] reasonable officer should have known, based on clearly established law, that denying a Muslim inmate the ability to engage in group prayer without any justification or compelling interest, as alleged in the [operative complaint], violates RFRA." *Id.* at *8. Here, again in contrast, Plaintiffs have identified no precedent holding that attempting to recruit an individual to serve as an informant on others in his religious community—using the No Fly List or any other incentive—imposes a substantial burden on the individual's religious exercise. The only legal authorities involving remotely similar circumstances suggest that an offer to serve as an informant in exchange for relief from one's watchlist status does *not* violate RFRA. *See El Ali v. Barr*, 473 F. Supp. 3d 479, 527 (D. Md. 2020); *Fikre v. FBI*, No. 3:13-cv-00899-BR, 2019 WL 2030724, at **8-9 (D. Or. May 8, 2019).

---

plaintiff submitted an administrative grievance asserting that the policy violated his right to freely exercise his religion").

² At least one court in this District has previously observed that *Salahuddin* appears to be inconsistent with intervening Supreme Court precedents explaining that "clearly established law" must not be analyzed at too high a level of generality but must be a "particularized" inquiry focusing on the facts of the case at hand. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 512 (S.D.N.Y. 2008). The Department of Justice is considering whether to seek further review in *Sabir*.

³ *Salahuddin v. Coughlin* involved a complete ban on group prayer, in contrast to the more limited restriction on group prayer at issue in *Sabir*.

On the face of the Amended Complaint, therefore, Plaintiffs' RFRA claims in this case lack three critical elements that were present in *Sabir*: (1) indications by Plaintiffs to the Individual Agent Defendants that the Agents' alleged conduct was burdening Plaintiffs' religious exercise, (2) activities by Plaintiffs that were "undoubtedly religious exercise," and (3) prior precedent addressing officials' obligations with respect to what the *Sabir* panel determined to be a similar religious activity (group prayer) in a similar context (a prison policy). Because of these defects, even assuming the facts alleged in the Amended Complaint to be true and drawing all reasonable inferences from those facts in Plaintiffs' favor, reasonable officers in the Agents' position "might not have known for certain" that their alleged conduct placed any burden (let alone a substantial burden) on Plaintiffs' exercise of religion. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). The Agents are therefore entitled to qualified immunity on the pleadings. *See also Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) (qualified immunity "should be resolved when possible on a motion to dismiss, before the commencement of discovery, to avoid subjecting public officials to time consuming and expensive discovery procedures" (citation omitted)).[4]

We thank the Court for its consideration of this letter.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

by: */s/ Sarah Normand*
SARAH S. NORMAND
ELLEN BLAIN
Assistant United States Attorneys
Tel.: (212) 637-2709/2743
Email: sarah.normand@usdoj.gov
 ellen.blain@usdoj.gov

cc: Counsel of Record (by ECF)

---

[4] While the *Sabir* panel noted that qualified immunity often cannot be determined based on the pleadings, *see* 2022 WL 2183439, at *8, it acknowledged "'the importance of resolving immunity questions at the earliest possible stage in litigation,'" *id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), and that qualified immunity is available at the pleadings stage where, as here, the defendants satisfy the "'more stringent standard applicable to that procedural route,'" *id.* (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). The Second Circuit emphasized in this very case that the defense can be "successfully asserted in a Rule 12(b)(6) motion." *Tanvir v. Tanzin*, 894 F.3d 449, 472 (2d Cir. 2018).