

CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

July 6, 2022

**By ECF**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

   Re:  *Tanvir v. Tanzin,* 1:13-cv-6951-RA

Dear Judge Abrams,

On behalf of Plaintiffs in this action, we write in response to Defendants' letter of June 28, 2022, ECF No. 144, concerning the Second Circuit's recent ruling in *Sabir v. Williams,* __ F. 4th __, 2022 WL 2183439 (2d Cir. June 17, 2022).

The plaintiffs in *Sabir v. Williams* are observant Muslim prisoners who believe that they are required to perform five daily congregational prayers with as many other Muslims as are available and choose to participate. *Sabir v. Williams,* 2022 WL 21833439, at *1. They alleged that while incarcerated at FCI-Danbury the wardens enforced a policy that restricted prayers in groups of more than two to the facility's chapel, despite its frequent unavailability. *Id.* Because of the policy, the *Sabir* plaintiffs were forced to forego a required religious practice to avoid disciplinary action. *Id.*

After exhausting the administrative grievance process, the *Sabir* plaintiffs brought several claims, including under the Religious Freedom Restoration Act for damages against the wardens. The district court held that the prison officials were not entitled to qualified immunity at the motion to dismiss stage. The Second Circuit upheld that ruling. The Second Circuit's ruling is instructive in at least three different respects: (1) advising that a high level of specificity is not required to establish the law for purposes of qualified immunity under RFRA; (2) re-affirming the necessity of postponing qualified immunity determinations for factual development; and (3) noting that even at the motion to dismiss stage, where a substantial burden has been made out, Defendants must be able to identify within the pleadings a compelling interest served by the imposition of the burden

---

(t) 718.340.4558
(f) 718.340.4533
(e) cunyclear@law.cuny.edu



First, contrary to the central thrust of Appellants' arguments to this Court, the *Sabir* panel made clear that for purposes of qualified immunity, the law need not be defined at a high level of specificity to give sufficient warning to officials. *See* Sabir at *8 (stressing that "[p]recedent "directly on point" is not required or law to be clearly established, *District of Columbia v.Wesby*, —— U.S. ——, 138 S. Ct. 577, 590, 199 L.Ed.2d 453 (2018), and "[i]t is not necessary, of course, that the very action in question has previously been held unlawful, "*Abbasi,* 137 S. Ct. at 1866 (internal quotation marks omitted)). Thus, "the absence of a decision by this Court or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established so long as preexisting law clearly foreshadows a particular ruling on the issue." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).

The *Sabir* defendants had argued that prior precedent, namely *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006), did not sufficiently alert them that the conduct at issue would be considered unlawful. *See* Br. of Appellants at 17, *Sabir v. Williams* (2d Cir. Mar. 11, 2011). The Second Circuit rejected the prison officials' argument that *Salahuddin*'s holding was merely "an abstract legal principle" that "cannot establish the law for purposes of qualified immunity." *Sabir*, at *9. The panel went on to explain that there are "some contexts in which a higher degree of specificity is required to establish the law for purposes of qualified immunity", such as in cases involving violations of the Fourth Amendment. *Id.* In the context of the Fourth Amendment, "it may be difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered." *Id.* (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)).

However, in the RFRA context, "[n]o such concerns are present." *Id.* "Based on RFRA's requirements, it is not "difficult for an [official] to know whether" an unjustified substantial burden on religious exercise "will be deemed reasonable."" *Id.* (quoting *Ziglar v. Abbasi*, 137 S. Ct. at 1866). Under RFRA, an official will know she has violated RFRA if she "substantially burdens a sincere religious exercise but cannot point to evidence that the application of the burden was in service of any interest – let alone a compelling one." *Id.* As Plaintiffs have argued, the decisions in *Thomas v. Review Bd. of the Indiana Employment Sec. Div*., 450 U.S. 707, 718 (1981) and *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) would have put Defendants on notice that they could not punish Plaintiffs for refusing to modify their religious exercise by placing them on the No Fly List.

Second, the panel in *Sabir* reaffirmed that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Sabir*, at *8 (citing *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020)). As the Second Circuit laid out in *Chamberlain*, the question of immunity cannot be resolved "prior to the ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised." *Chamberlain*, 960 F.3d at 110. As Plaintiffs have laid out in their briefing, a qualified immunity ruling is best left for a later stage in the proceedings, where there has been more factual development.

Third, the panel noted that under RFRA, officials seeking qualified immunity at the motion to dismiss stage bear the burden to demonstrate– by pointing to evidence in the pleadings or corresponding exhibits -- that defendants had a compelling government interest in substantially burdening religious exercise. *Id.* at *6. *Id.* As the panel noted, once a plaintiff has made out a

substantial burden, the official must then establish that the application of the burden to plaintiffs is the "least restrictive means of furthering a compelling governmental interest." *Id.* at *6. If an official cannot point to any interest, "compelling or otherwise" when she substantially burdens a plaintiff's exercise of religion, then she "*necessarily* violate[es] RFRA." *Id.* (emphasis in original).

In their briefing, Defendants failed to identify anything in the complaint that would make out a specific compelling governmental interest in forcing the Tanvir plaintiffs, like the *Sabir* plaintiffs, to impermissibly "choose between acting in accordance with their sincere religious beliefs" and facing governmental punishment. *See Sabir* at *5.

Defendants have attempted to argue that Plaintiffs were on the No Fly List for reasons unrelated to their refusal to serve as informants, although notably this information would not on its own warrant their placement on the No Fly List. Mot. to Dismiss at 34, ("the government *may* well have had some *potentially* derogatory information about Plaintiffs or their associates" (emphasis added). They have also suggested that the government may have a "compelling interest in recruiting informants in these circumstances," *Id.* at 22, but they pointed to nothing on the face of the Complaint or exhibits attached thereto which would explain what compelling governmental interest was served in placing and/or keeping these specific Plaintiffs on the No Fly List because they refused to serve as informants in their religious communities. Similar to the defendants in *Sabir*, there is nothing in the complaint or exhibits in this action showing that Defendants relied on a compelling interest and this court should similarly refuse to "manufacture facts out of thin air" at this stage in the proceedings. *See Sabir*, at *6 (quoting *Salahuddin*, 467 F.3d at 275).

It is of little import for the purposes of this action that the *Sabir* plaintiffs made the prison wardens aware of the burden on religious exercise that the group prayer policy imposed. Defendants try to make hay of this, Def's. Ltr. ECF No. 144, at 1-2, ignoring that in order for the *Sabir* plaintiffs to even enter the courtroom, they would have had to exhaust the administrative grievance process, or risk running afoul of the Prison Reform Litigation Act. Plaintiffs here had no such mechanism. The DHS TRIP process did not serve as a mechanism for Plaintiffs to complain that their exercise of religion had been substantially burdened.

Further, as discussed in our briefs and at oral argument, it is clear that any reasonable officer (particularly ones working on purported counter-terrorism operations) would have known that by asking Plaintiffs to spy on their religious communities they were necessarily asking Plaintiffs to modify their religious exercise, whether by dictating which mosque to attend and when, or by more generally asking them to attend and report on the ongoings in other religious spaces.

We thank the Court for its consideration of this letter.

Respectfully,

CLEAR project

/s/ Naz Ahmad
Naz Ahmad
Princess Masilungan

Mudassar Toppa
CLEAR PROJECT
Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718)-340-4630
naz.ahmad@law.cuny.edu

Baher Azmy
Shayana Kadidal
Diala Shamas
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Jennifer R. Cowan
Erol N. Gulay
Christopher S. Ford
Ryan Mullally
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

*Counsel for Plaintiffs*

cc:    Counsel of Record (by ECF)